Morton B. Silberman, J.
This is an application to stay arbitration proceedings.
At some time prior to April 1, 1971, certain teachers filed applications for sabbatical leave during the 1971-1972 school *318 year. Said applications were filed pursuant to article XV of the collective bargaining agreement between petitioner (hereinafter “School District”) and respondent (hereinafter “Teachers Association ”).
On April 12, 1971, and prior to any action by the School District on the sabbatical applications, section 82 of the Civil Service Law was enacted (L. 1971, ch. 124). Effective immediately, and with certain exceptions not relevant hereto, that statute prohibited the granting of sabbatical leave to any ‘1 public officer or employee ” for a period of one year, commencing July 1,1971. However, section 82 contains the following “saving clause” (subd. 3): “ This section shall not be construed so as to impair any contractual right to a * * * sabbatical leave * * * where such contractual right was in existence and enforceable prior to the effective date of this section ” (i.e., April 12, 1971).
By reason of section 82, the School District has refused to process applications for sabbatical leave, thus giving rise to the grievance sought by the Teachers Association to be submitted to arbitration.
The School District and the Teachers Association are in agreement that it would be violative of section 82, and therefore illegal, to grant sabbatical leave to the teachers in question, unless they were possessed of an enforceable contract right to such leave before April 12, 1971, when section 82 became effective. The School District interprets article XV of the collective bargaining agreement as giving the teachers only the right to apply for sabbatical leave. The School District contends that since no action was taken on the sabbatical applications prior to the effective date of section 82, that, therefore, the teachers do not have such an enforceable contract right as would bring them within the saving clause of that statute. The Teachers Association, on the other hand, interprets article XV as giving the teachers a contractual right to sabbatical leave upon the filing of their respective applications, provided only that they meet the eligibility requirements set forth in article XV.
Obviously, then, a final resolution of the grievance herein turns upon the question of whether or not the provisions of article XV of the collective bargaining agreement clothed the teachers with an enforceable contract right to sabbatical leave which vested prior to the effective date of section 82. The issue before the court on the within motion is whether this issue is to be determined by a court or by an arbitrator.
Section 82 being of such recent origin, there are no appellate cases directly in point. The School District relies upon two *319 decisions made at Special Term (Legislative Conference of City Univ. v. Board of Higher Educ., 67 Misc 2d 648, and Mahopac Teachers Assoc. v. Board of Educ., 67 Misc 2d 268). Neither of the cited cases is in point. Although the respective Justices therein made determinations on the merits to the effect that the particular collective bargaining agreements involved did not give rise to pre-existing contractual rights to sabbatical leave, in neither of the cases was the issue of arbitrability of the dispute tendered to the court.
The Teachers Association cites Matter of Board of Educ. (Northport Teachers Assn.) (N. Y. L. J., Aug. 12, 1971, p. 13, col. 5), wherein the issue of arbitrability was squarely raised. Mr. Justice Cohalau directed the parties to proceed to arbitration, relying upon the now familiar line of cases expressing the strong State and Federal policy in favor of resolving labor disputes by means of arbitration (see, e.g., Steelworkers v. Warrior (& Gulf Co., 363 U. S. 574; Matter of Howard & Co. v. Daley, 27 N Y 2d 285; Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380). However, it does not appear from the reported decision that the troublesome public policy argument advanced by the School District herein, and discussed below, was raised or considered by Mr. Justice Cohalaít.
There is no serious question but that in the absence of section 82 the dispute herein would constitute an arbitrable “ grievance ” under the broad definition of that term contained in the collective bargaining agreement (see art. XXII, subd. B). The School District, however, argues that section 82 reflects an expression by the Legislature of a major public policy. As such, the School District contends that disputes arising under section 82 should be resolved by the courts and not by an arbitrator. The School District cites several cases in support of this contention.
In Matter of Aimcee Wholesale Corp. (21 N Y 2d 621), the Court of Appeals stayed arbitration of a dispute predicated upon alleged violations of the Robinson-Patman Act (U. S. Code, tit. 15, § 13) and of the Donnelly Act (General Business Law, § 340, subd. 1). In so doing, the court stated (p. 629): “We have often held that the broadest of arbitration agreements cannot oust our courts from their role in the enforcement of major State policies, especially those embodied in statutory form [citing cases].”
In Board of Educ. v. Associated Teachers of Huntington (36 A D 2d 753), the court declared void a provision in a collective bargaining agreement which provided for submission to arbi *320 tration of disputes concerning whether a teacher should he dismissed for incompetency or misconduct. There, the court stated (p. 753): “ Since the dismissal of a teacher for incompetency or misconduct is a matter of vital importance to the public and especially school children who would be affected thereby, the contractual delegation to an arbitrator or arbitrators of the power to determine whether a teacher should be dismissed for incompetency or wrongdoing is void as contravening* major public policy [citing cases].”
The gravity of the fiscal crisis confronting the State and virtually every local governmental unit thereof is a matter of common knowledge and of vital concern to all. Section 82 is a legislative expression of that crisis. It was passed, as an emergency measure, upon a message of necessity by the Governor (N. Y. Const., art. III, § 14), and is hut one of a series of measures deemed necessary by the Governor and the Legislature to ‘ ‘ cut back ’ ’ and to eliminate all hut essential expenditures.
The court is fully aware of the contributions made by the process of arbitration in the field of labor relations. The court fully subscribes to the line of cases which encourage the arbitration of disputes arising under collective bargaining agreements. However, where a major public policy is involved, as expressed in section 82, the court is of the opinion that the public interest requires that issues of law and of fact as to the application of such legislation should be resolved by a court rattier than an arbitrator.
Accordingly, the petition to stay arbitration herein is granted.