Edward J. Greenfield, J.
Plaintiffs, 31 sergeants and 10 lieutenants in the New York City Police Department, bring this action for back pay and prospective salary relief, contending that as persons designated as commanders and supervisors of *842 detective squads, the law requires that they receive appropriate compensation. The defendants, the Mayor of the City of New York, Police Commissioner, and the City of New York have moved to dismiss the complaint for failure to set forth a cause of action. Plaintiffs submitted a cross motion for summary judgment. Defendants have also made a motion to stay the action pending arbitration of plaintiffs’ grievances.
This matter raises important policy questions as to whether the city is proceeding in a legal fashion as mandated by statute, and the extent to which statutory rights may be subsumed by collective bargaining procedures. Before the court can consider the merits of plaintiffs’ claims, it must first deal with the threshold question of whether or not it has jurisdiction to decide this issue, or whether the parties must be relegated to the grievance procedures as set forth in the collective bargaining agreements between the City of New York and the Lieutenants Benevolent Association and the Sergeants Benevolent Association.
It is the contention of the city that the underlying dispute must be resolved through the invocation of the grievance and arbitration machinery set forth in the collective bargaining agreements. Grievance and arbitration provisions of the collective bargaining agreements are contained in article XXIII. Section 1 thereof enumerates as grievances subject to these procedures: “ (1) A claimed violation, misinterpretation or inequitable application of the provisions of the agreement; * * * (5) A claimed assignment of the grievant different from those stated in his job title specification ”.
Inasmuch as the salary scales for lieutenants detailed as commanders of detective squads, and sergeants detailed as supervisors of detective squads, are set forth in the collective bargaining agreements at a higher rate than that of other lieutenants and sergeants, defendants contend that the plaintiffs are claiming a violation of the prescribed salary scales as set forth in the agreements. This, urges the city, constitutes a grievance to be dealt with exclusively by grievance and arbitration procedures, and not in an action at law.
The plaintiffs, on the other hand, argue that the court is not ousted of jurisdiction, because they contend there has been a statutory violation rather than one involving the collective bargaining agreements — to wit, a violation of the provisions of subdivision c of section 434a-3.0 of the Administrative Code of the City of New York, which mandates payment to them of the higher salary. This violation, they urge, is cognizable in an action at law. They argue further that as a matter of law, and *843 as a matter of construction of the collective bargaining agreements, grievance and arbitration procedures are not exclusive, and the existence of such procedures does not preclude proceeding by way of court action.
Bach of the plaintiffs has already invoked and exhausted the grievance procedures by taking appeals through departmental channels, and their claims have been rejected at the highest levels of the Police Department. The next step prescribed by the collective bargaining agreements would be for binding arbitration. Before that can be done, subdivision d of section 1173-8.0 of the Administrative Code of the City of New York requires a formal written waiver “ of the right * * * to submit the underlying dispute to any * * * judicial tribunal except for the purpose of enforcing the arbitrator’s award,” as a precondition to arbitration. Plaintiffs have declined to execute such a waiver and have proceeded directly in court.
Plaintiffs initially took the position that the instant dispute involved the interpretation and application of a statutory law, which arbitrators could not be permitted to construe. (Matter of Aimcee Wholesale Corp., 21 N Y 2d 621; Matter of Allied Van Lines, 35 A D 2d 191, 193; Weintraub v. Vigilant Protective Systems, 36 A D 2d 529; Central School Dist. No. 2 v. Ramapo School Dist., 67 Misc 2d 317, affd. 40 A D 2d 861.) However, during the pendency of this matter, the Court of Appeals handed down its decision in Matter of Associated Teachers of Huntington v. Board of Educ. of Town of Huntington (33 N Y 2d 229). There, it was explicitly held that a collective bargaining agreement which provided for arbitration of issues covered to some extent by statutory law could properly be decided by arbitrators. Matter of Aimcee Wholesale Corp. (supra) was distinguished as a case involving antitrust law provisions which were of such great importance to the State that as a matter of policy, construing of the law could not be left to commercial arbitration. Plaintiffs concede that in light of this decision, their prior claim that arbitrators were without power to construe statutes is untenable. While it has thus been determined that where both parties agree to go to arbitration, the arbitrators may ordinarily construe statutory law, the question remains open as to whether or not arbitration is the sole and exclusive remedy.
The dispute here concerns the appropriate pay scale for lieutenants and sergeants designated to serve as commanders and supervisors of detective squads. The collective bargaining agreements specify the basic annual salary rates for such service. They do not specify the conditions under which given *844 persons are entitled to receive them. There is no contention by the plaintiffs that the salary rates specified in the contracts are not being adhered to. Bather they urge that the dispute is whether or not, under the law, they are entitled to be considered in the category specified in the contract to receive higher salary rates. An arbitrator delegated to construe the contracts could properly determine whether or not, under the contract, differential salary payments, to persons performing identical duties as commanders and supervisors of detective squads, are permissible. Plaintiffs, in fact, concede that the operative union contracts do not bar the practices challenged. They urge, however, that statutory law compels a judicial resolution in their favor. .
The plaintiffs here are not urging that they have been improperly assigned, that their duties conflict with their job specifications, or that the department has no power to compel them to perform their duties as commanders and supervisors. Their claim relates solely to back pay and prospective pay. Section 434a-15.0 of the Administrative Code of the City of New York, expressly recognizes the right of police officers to bring l t actions or proceedings, either at law or in equity * * * against the police department * * * to * * * compel the payment of * * * salary, pay, money or compensation for or on account of any service or duty ”. This right, expressly -recognized by law, has not been abrogated by any provisions of the collective bargaining agreements. Indeed, article XXX of the union contracts declares: “ This agreement is not intended and shall not be construed as a waiver of any right or benefit to which [police officers] are entitled by law ”.
The right to sue in a court of law for back pay is such a right. A further indication that existing rights were not being limited but were being broadened by the use of grievance and arbitration is the provision of section 6 of article XXIII of the union contracts, which provides: “ The grievance procedure established herein before is designed to operate within the framework of, and is not intended to abolish or supersede, existing rules or procedures providing for additional methods of redress.”
It thus becomes amply clear that while grievances such as matters of status, tenure, leave and pay may appropriately be dealt with by arbitrators, whether or not incidental statutory construction is involved, the grievance and arbitration procedure is not exclusive. It is “ an additional'method of redress ”. The Court of Appeals in Board of Educ., Union Free School Dist. No. 3 v. Associated Teachers of Huntington (30 N Y 2d 122) *845 recognized the existence of alternative methods of challenging an administrative decision. In that case, the collective bargaining agreement gave the public employee the right to present grievances to arbitration, in addition to the statutory right to appeal within the administrative agency to the commissioner or to go to court. It was clearly recognized that arbitration was merely one of the possible avenues of procedure. The court declared (p. 132): “ Once the controversy is heard and a decision arrived at either by the arbitrator or by the commissioner or by the judge, that is the end of the matter. As already indicated, the collective bargaining agreement does no more than give the employee a possible third means of reviewing a Board determination ”.
It would appear, therefore, that the grievance and arbitration procedure set forth in the collective bargaining agreements was neither pre-emptive nor preclusive. In reaching this conclusion the court is not unmindful of the opinion of Mr. Justice Silver-man of this court in Matter of Crowley (Cawley) (N. Y. L. J., Dec. 26, 1973, p. 2, col. 4). It was there held that in a dispute between the Detectives Endowment Association and the Police Department of the City of New York, arbitration would be compelled as the exclusive remedy even though statutory violations were claimed. While I would not be as ready as my colleague to limit the court’s jurisdiction in dealing with disputes in the public sector, it appears that there are distinguishing features in this case which do not require comparable results. First, in the Crowley case the grievance or complaint dealt with the reassignment of large numbers of detectives to patrol duty, which those officers contended was an assignment to duties different from those stated in their job specifications. That is a specifically delineated grievance set forth in the collective bargaining agreements. There was no claim that this reassignment was in violation of a specific statute, and Justice Silverman held that the claim of statutory violation was of an “ extremely tenuous nature ”. Justice Silverman invoked a presumption in favor of pre-emptive arbitrability, relying upon Matter of Howard & Co. v. Daley (27 NY 2d 285, 291) where it was held that arbitration between a business and a union would not be denied unless it could be said with positive assurance that the arbitration clause did not cover the asserted dispute.
A presumption designed to encourage industrial self-government in the private sector through collective bargaining and arbitration as an alternative to economic anarchy and bruising tests of strength (the rationale of Steelworkers v. Warrior & *846 Gulf Co., 363 U. S. 574, 580 quoted approvingly by the Court of Appeals in the Howard & Co. case, supra) is not necessarily applicable in controversies in the public sector where the alternative to arbitration is not chaos but a substantial body of constitutional, statutory and case law. The arbitrator administers a private body of rules within the charter created by the parties, and serves their interest only. (See Shulman, Reason, Contract and Law in Labor Relations, 68 Harv. L. Rev. 999, 1016.) When the dispute transcends the narrow interests of the parties alone, and involves broader questions affecting the public interest, public employees and public funds, to allow an arbitrator to preeempt the field to the exclusion of the courts, especially where policy has already been enunciated by statute, would appear to be neither desirable nor necessary. The public interest is better served when a statute is construed by a court, and the correctness of that reading is subject to appellate review, than when the final reading of the statute is in the hands of arbitrators. Finality in dealing with factual grievances by arbitrators may be fine, but such delegated finality in deciding what the law is, is another matter altogether.
Moreover, a review of the history, both of the New York City Collective Bargaining Law dealing with public employees (Administrative Code of City of New York, § 1173-1.0 et seq.) and of the collective bargaining agreements negotiated thereunder covering the police, would appear to supply the “ positive assurances ” that arbitration was never intended to be the exclusive femedy for disputes of this kind. This is indicated by statements and papers before this court, which apparently were not before the court in Crowley. In the early draft of the collective bargaining agreements, the city attempted to provide for grievance and arbitration procedure ‘ ‘ as the exclusive procedure for resolving matters defined as grievances herein ”. That provision was objected to and was excluded from the final draft of the contract. The history of the negotiations leaves little room for, doubt that the parties never intended that persons with grievances would be ousted from their right of judicial recourse.
The New York City Collective Bargaining Law sets forth the enunciated policy of resort to grievance and arbitration for the “ final, impartial arbitration of grievances ”. (Administrative Code of the City of New York, § 1173-2.0.) Those grievance and arbitration procedures are invocable by either the public employer or a designated employee organization. (Administrative Code of the City of New York, § 1173-8.0, subd. f.) In Crowley, the claimed improper reassignment of personnel clearly *847 fell within the scope of grievances as set forth in the Administrative Code and in the collective bargaining agreements. Section 1173-3.0 (subd. o, par. 2) defines a “ grievance ” as follows: “ A claimed violation, misinterpretation or misapplication of the rules or regulations of a municipal agency or other public employer affecting the terms and conditions of employment.”
It is notable that the definition of grievances over which the arbitrators have jurisdiction gives them the right to construe agency “ rules or regulations ”, but does not expressly confer upon them the power to deal with claimed violations of statutes. Statutory history indicates that this was not an inadvertent oversight. Early drafts of the New York City Collective Bargaining Law proposed by union representatives expressly conferred upon, arbitrators the right to construe statutory law. These proposals were successfully rejected by the city. -
The statutory and negotiation histories dealing with the arbitrator’s power over statutory disputes, and the question of the nonexclusivity of the arbitral remedy are borne out by actual practice. (See, for example, Matter of Uniformed Fire Fighters Association, New York City Office of Collective Bargaining, 3-18-71); and Matter of the City of New York v. Local 1180 CWA, 3-24-72.) In the Fire Fighters case, it was ruled that since there was a claim that the Fire Commissioner had exceeded his authority under the statute, the issue was properly determinable in a judicial forum. Conversely, in the Local 1180 case, it was ruled that resort to the courts would not bar arbitration, when further right to court action was waived. - Under the circumstances here involved, where a determination of the meaning of the statute referring to “ designated ” officers and its application to the undisputed facts of this case is required, neither the specialized expertise of arbitrators, nor intimate familiarity with internal procedures and practices, which may make arbitration a more suitable remedy for resolution of routine grievances, is called for. This court can see nothing in the provisions of the collective bargaining agreements themselves, or in the statutory and case law, to compel the conclusion that the existence of the remedy of arbitration pre-empts and precludes all other remedies, and bars recourse to the courts in a lawsuit for back pay.
We can now turn to the merits of plaintiffs’ claim for higher pay in accordance with the claimed mandate of the law. Subdivision e of section 434a-3.0 of the Administrative Code of the City of New York reads as follows: “ The commissioner may designate lieutenants as commanders of detective squads, and *848 sergeants as supervisors of detective squads, who' while performing duty in such division and while so designated as commanders of detective squads or supervisors of detective squads shall be paid such salary as may be determined by the mayor.”
Salaries for lieutenants designated as commanders of detective squads (hereinafter CDS salaries), and sergeants designated as supervisors of detective squads (hereinafter SDS salaries), have been established and are set forth in the collective bargaining agreements, as worked out by the city’s Office of Collective Bargaining acting for the Mayor. It is the contention of plaintiffs that, while some persons serving as com.manders and supervisors of detective squads receive the higher CDS and SDS salaries, they, who perform exactly comparable work and have received similar designations, are deprieved of the benefit of such' higher salaries. It is the contention of the city that, regardless of the nature of the service performed by the plaintiffs, they do not qualify for the higher salaries until they have been designated and officially detailed by the Police Commissioner as supervisors and commanders. Further, it contends, until commanders and supervisors have received “ effective personnel orders ” directing the payment of CDS and SDS salaries, they have not been officially detailed as commanders and supervisors of detective squads within the contemplation of the statute.
In plain fact, this reasoning by the city appears to be tortuous and self-serving. It boils down simply to this — that no matter what duties personnel may have been assigned to perform, no matter what responsibilities are entailed, no matter what the appearance may be that they have been “ designated ” as commanders and supervisors, they will not receive the scheduled salary for that position until someone in the city decides to qualify them for it by issuing an “ effective personnel order ”. In other words, amongst all those occupying similar positions, and serving similar functions, higher pay will be accorded only to those selected few who are among the chosen upon whom the title is conferred. The law, however, does not blink away realities and engage in an elaborate minuet with chosen partners. The very meaning of the law, the uniformity and equality which make it a system and a science, and which bar whimsical and haphazard applications, require comparable treatment for all persons in comparable positions and situations. It is not a clerical tapping on one’s shoulder for budgetary purposes which is determinative, but rather the realities of whether in fact a per *849 son has been designated and serves in the position and functions denominated by law.
Let it be noted that we are not here dealing with persons who are performing on a temporary assignment, nor are we dealing with the class of individuals who assert that they should be assigned as commanders and supervisors. The Police Commissioner is wholly free, within his proper discretion to assign and reassign lieutenants and sergeants for comqnand and supervisory responsibility. (Cf. Matter of Detective Endowment Assn. v. Leary, 36 A D 2d 289, affd. 30 N Y 2d 577.) Here, however, it is alleged that each of the plaintiffs has received orders and assignments giving them command and supervisory responsibilities, that they perform command and supervisory services and duties of exactly the same nature as performed by those lieutenants and sergeants now receiving CDS and SDS salaries, and that in every essential respect, except for pay, they are treated as the commanding and supervising officers of their squads. They have responsibilities over the personnel in their squads, .they have to see to it that command decisions are properly executed, they have to review the performance of personnel, and perform every aspect of command and supervisory duties. The issuance of a piece of paper as a magic passport to the higher salaries changes nothing with respect to their actual designation and responsibility. Indeed, during the pendency of this matter, several of the plaintiffs have received their 1 ‘ magic passport ” and are now entitled to the higher salary. As to them, this proceeding becomes moot. For the rest, however, it accentuates the problem — for there has been no change whatever in their actual operational duties. The incantation has been spoken, the magic words uttered, and some of the plaintiffs find themselves transformed from ugly frog to handsome prince. The underlying complaint of the remaining plaintiffs is thus highlighted — for what they object to is the random selectivity which confers distinction upon one and denies it to another. A statute which mandates specified pay for all persons “ designated ”, and which provides that such salary “ shall be paid ”, does not permit differentiation and distinction amongst designees. It is the fact of designation and not the descriptive word employed which must prevail. If, in fact, plaintiffs have been effectively “ designated ” as commanders and supervisors, the law requires that they shall be paid the prescribed salary.
The dispute here on the merits is not with respect to what duties the plaintiffs perform — there appears to be no effective *850 issue as to that. Bather, the dispute centers on the extent to which the city may distinguish between all members of a comparable group. It is the position of the defendants, very plainly-put, that ‘ ‘ while the plaintiffs, all holding the grades of sergeant and above, obviously perform supervisory or leadership roles within the department, none of the plaintiffs, have been officially detailed as either ‘ Commander of Detective Squad or ‘ Supervisor of Detective Squad ’ ”. Except for plaintiffs Yuknes, Baccaglini, Yost and Fullam, none of the plaintiffs have received “ effective personnel orders ”, which are in effect warrants for the higher pay. The question of law as to whether or not the city is obligated to pay only those persons that it agrees to pay is resolved against it. The effective designation, as contemplated by the statute, is the actual designation for' service, and not the formal designation for pay. Subdivision c of section 434a-3.0 cannot be construed as a statute permitting discretionary bonuses to some commanders and supervisors of detective squads but not to others. The fact that the Police Department has provided fewer budgetary lines for commanders and supervisors of detective squads than the actual number of positions is no justification for a violation of the clear mandate of the law. (See Matter of O’Reilly v. Grumet, 308 N. Y. 351.)
The court wishes to note at this time ihe superlative legal work and the excellent legal and factual memoranda which have been submitted by counsel on both sides. They have presented the issues herein in all facets, displaying a depth and diligence rarely encountered.
In the light of the foregoing, defendants’ motion to dismiss the action for failure to state a cause of action is denied. Defendants ’ motion to compel arbitration is likewise denied, this court having concluded that arbitration is not the exclusive remedy, and that plaintiffs have retained the right to have the court adjudicate a dispute involving a claim of violation of a statutory duty.
Although the claim of the plaintiffs that they presently serve as the de facto commanders and supervisors of detective squads appears to have ample substantiation, their cross motion for summary judgment must be denied, as issue has not yet been joined. (CPLR 3212.) The defendants must be accorded the right to interpose' an answer and put in issue the question of whether or not any particular individual is in fact the de facto designated commander or supervisor, and regularly performs the duties of such a position.